UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA B.,[1]<br>   Plaintiff<br>  v.<br>KILOLO KIJAKAJI, Acting Commissioner of Social Security,<br>   Defendant. | Case No. 2:20-cv-011359-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Sandra B. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Childhood Disability Income Benefits. The parties filed consents to proceed before the undersigned United States Magistrate Judge (Dkts. 11, 12) and briefs addressing disputed issues in the case [Dkt. 20 ("Pltf.'s Br.") and Dkt. 21 ("Def.'s Br.").] The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

remanded.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed applications for benefits on June 1, 2018, alleging disability beginning on July 19, 2006. [Dkt. 15, Administrative Record ("AR") 184-186.] Plaintiff's applications were denied at the initial level of review and on reconsideration. [AR 47-61, 92-103.] A hearing was held before Administrative Law Judge Diana J. Coburn ("the ALJ") on March 18, 2020. [AR 33-46.]

On April 1, 2020, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability. [AR 17-28.] At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. [AR 19.] At step two, the ALJ determined that Plaintiff has the following severe impairments: multiple sclerosis, obesity, and depression. [AR 19.] At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations. [AR 20]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except:

> she must never climb ladders ropes or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she is precluded from exposure to unprotected heights and dangerous moving machinery; she can perform simple and routine tasks; and she can make simple work-related decisions.

[AR 22.]

At step four, the ALJ determined that Plaintiff, who had not attained the age of 22 years old as of the alleged disability onset date, had no past relevant work. [AR 28.] At step five, the ALJ found that considering Plaintiff's age, which meets the definition of a younger individual, and her education, work experience, and

1  RFC, there are jobs that exist in significant number in the national economy that she
2  can perform. [AR 28.] Based on these findings, the ALJ found Plaintiff not
3  disabled through the date of the decision. [AR 28.]
4      Plaintiff sought review of the ALJ's decision, which the Appeals Council
5  denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.]
6  This action followed. Plaintiff raises the following issues challenging the ALJ's
7  findings and determination of non-disability:
8      1. Whether the ALJ properly evaluated the treating opinion of
9      physician Margaret Burnett, M.D.; and
10     2. Whether the ALJ failed to properly evaluate Plaintiff's testimony.
11     Defendant asserts that the ALJ's decision should be affirmed, or in the
12 alternative, remanded for further development of the record if the Court finds the
13 ALJ erred.

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence … is 'more than a mere scintilla' … [i]t means – and only means – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted).

The Court will uphold the Commissioner's decision when "the evidence is susceptible to more than one rational interpretation." *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

404.1502(a).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

### A.  The ALJ Improperly Evaluated Dr. Burnett's Opinion

The first issue in dispute is whether the ALJ properly evaluated the medical evidence.  Specifically, whether the ALJ provided a sufficient justification, supported by substantial evidence, for finding that the treating neurologist's opinion was not persuasive.  For the reasons discussed below, reversal and remand for further administrative proceedings are warranted on this issue.  Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

#### 1. Relevant Law

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  Under prior Ninth Circuit law, an ALJ must

provide "clear and convincing reasons" supported by substantial evidence before rejecting a treating or examining physician's uncontradicted opinion and "specific and legitimate reasons" supported by substantial evidence before rejecting a treating or examining physician's contradicted opinion. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1161 (9th Cir. 2014). An ALJ could meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

However, because Plaintiff filed her applications after March 27, 2017, her claim is governed by the SSA revised regulations. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). The revised regulations provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the revised regulations, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." See 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ is to evaluate medical opinions and prior administrative medical findings by evaluating their "persuasiveness." *Id.* In determining how "persuasive" a medical source's opinions are, an ALJ must consider the following factors: supportability, consistency, treatment or examining relationship, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are "the most important factors." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), the Ninth Circuit concluded that the revised regulations "displaced" prior Ninth Circuit case law establishing a hierarchy of, or deference to, medical opinions. *Woods*, 32 F.4th at 787, 789-792; *see also Jeanett M. v. Kijakazi*, 2022 U.S. Dist.

LEXIS 76683, 2022 WL 1239344, at *3 (N.D. Cal. Apr. 27, 2022).

While the ALJ must articulate how he or she considered supportability and consistency, an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. See 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792. Under the new regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. Nevertheless,

> Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).

### 2. Relevant Medical Record

Plaintiff was born in July 1990, and she was 15 years of age on her alleged disability onset date. [AR 47, 184.] At the administrative hearing, Plaintiff testified that she dropped out of high school before her senior year after suffering from a seizure in 2006. [AR 37, 205, 716-717, 757.] Following her seizure, Plaintiff reported spending two weeks in the hospital where she was diagnosed with multiple sclerosis ("MS"). [AR 757.] In her function report, Plaintiff stated that her MS causes "pain and weakness on a daily basis." [AR 225.] Her MS also causes memory loss, cognitive impairment, and it limits her ability to concentrate. [AR 225.]

On June 30, 2011, Plaintiff began treating with Dr. Burnett, a board-certified neurologist. [AR 757.] Dr. Burnett provided treatment for Plaintiff's MS, depression, and cognitive impairment at Harbor UCLA and Rancho Los Amigos Rehabilitation Center from 2011 through at least October 2019. [AR 407-409, 413-

419, 425-426, 451-456, 458-459, 476-478, 733, 743, 909, 1475-1498.]

At her June 2011 examination, Plaintiff reported being "fairly stable" on Rebif injections and experiencing "no relapse" during 2010. [AR 757.] Plaintiff complained of being "forgetful" and she had "some problems with concentration." [AR 758.] Dr. Burnett noted Plaintiff was "slightly slow," but could "give a good history" using "normal language." [AR 758.] Dr. Burnett continued Plaintiff's medication and referred her "to vocational rehab for the possibility of work exploration, as well as the possibility of finishing her GED." [AR 759.]

In, or around, February 2012, Plaintiff became pregnant. [AR 578.] A few months after the birth of her daughter, in April 2013, Plaintiff reported she was on no medications. [AR 974.] She informed her provider that her ability to walk was "not limited," but she was "weak and numb on her right side including her arm and leg," so she had to carry her daughter on her left. [AR 974.] Plaintiff's cognition was noted as "within normal limits" (AR 974), however her comprehension was noted as "mildly slow." [AR 975.]

Later in 2013, Dr. Burnett indicated that Plaintiff had poor compliance with her medications because she could not manage the injections. [AR 755.] Dr. Burnett referred Plaintiff to physical therapy "to improve the strength and use of her upper extremities." [AR 755.] Dr. Burnett also discussed sending Plaintiff for a clinical trial at USC, but she noted that it would require "careful discussion" with Plaintiff who had been noncompliant with her medication. [AR 755.] In December of the same year, Plaintiff complained of weakness but reported having no pain. Upon examination, Dr. Burnett noted that Plaintiff appeared to be "weak bilaterally with some limp on the left." [AR 743.] She was given a five-day course of steroids. [AR 743.]

By April 2014, Plaintiff was being treated with Tysabri infusions which she was tolerating well without any issues. [AR 751.] Plaintiff, however, complained of "some problems with concentration and depression." [AR 751.] She reported

7

"doing fairly well," having "lots of energy," sleeping well, and "tolerating" her protocol. [AR 751.] But she also reported that she "occasionally feels as if she is going to fall when walking." [AR 751.]

On May 17, 2014, Plaintiff went to the emergency room requesting a "Tysabri injection" as prescribed by Dr. Burnett. [AR 563.] Plaintiff presented with complaints of intermittent dizziness, double vision, right leg burning sensation, and "MS flare ups." [AR 563.] Plaintiff reported that she was previously taking Tysabri which "helped with her symptoms," but she had last received the medication two months ago. [AR 563.] Plaintiff explained that she went to a facility in Torrance to receive her infusion, but she was denied "likely because of insurance reasons." [AR 563.] Dr. Burnett instructed Plaintiff to go to Harbor UCLA to get the infusion and "she waited for over 12 hours at Harbor UCLA [but] was not seen." [AR 563.]

In 2015, and 2016, Plaintiff reported increased symptoms after missing her monthly Tysabri injections for three months "because of insurance issues." [AR 566, 748.] At that time, Plaintiff reported walking an hour per day with her daughter and riding a stationary bicycle for exercise. [AR 837, 894, 897.] However, Dr. Burnett completed paperwork for Plaintiff so that she could obtain a "parking sticker as it is somewhat difficult for [Plaintiff] to walk far distances." [AR 901.] Upon examination, her clinical findings were noted as "stable" with some slight weakness, and a mild cognitive impairment. [AR 562, 564, 749, 752, 837-39, 891, 894, 895-96, 898].

In 2017 and 2018, Plaintiff lived with her boyfriend and pre-school-aged child, for whom she provided regular care. [See AR 734, 807.] During this time, Plaintiff continued to receive her scheduled infusion treatments (see, e.g., AR 428, 794, 796, 799), exercise on a regular basis (see, e.g., AR 433, 473, 488, 828, 949), and she was generally stable. [See, e.g., AR 464, 488, 537, 795, 809.]

On September 17, 2018, Plaintiff attended a consultative neurological examination for her disability claim conducted by neurologist Robert Moore, M.D.

[AR 725-729.] At the time of the examination, Dr. Moore expressed that he did not "have access to [Plaintiff's] medical records." [AR 728.] Plaintiff reported that "at the current time," her legs feel weak. [AR 726.] However, Dr. Moore noted that Plaintiff could "arise from a chair unassisted." [AR 727.] She exhibited "possibly a mild left foot drop with a minor tendency to circumduct the left leg and [she] does not heel-toe or tandem walk." [AR 727.]

During the consultative examination, Plaintiff was able to recall two of three objects after five minutes; she had mildly decreased rapid alternating movements in her toes and slightly slow performance of heel-shin test, and she had reduced (1/4) reflexes and only mildly reduced (5-/5 to 4+/5) motor strength. [AR 727-28.] Dr. Moore opined that Plaintiff had the capacity for a range of light exertion work, with the ability to stand or walk two hours in an eight-hour workday. [AR 728-29.] Dr. Moore additionally opined that Plaintiff was "cognitively intact." [AR 729.]

On February 19, 2020, Dr. Burnett completed a residual functional capacity questionnaire. [AR 1485-1489.] Dr. Burnett opined, among other limitations, that Plaintiff could stand or walk less than two hours in an eight-hour workday and would miss three days of work per month. [AR 26, 1487.] Dr. Burnett additionally opined that Plaintiff could stand for only five minutes at a time before requiring rest and could sit for no more than two hours before needing to get up. [AR 1487.]

The ALJ gave the following reasons for finding Dr. Burnett's opinion unpersuasive:

> This opinion is unpersuasive because it is brief, conclusory, and inadequately supported by objective findings. Dr. Burnett did not support her opinion with an explanation for this assessment. She primarily summarized in the treatment notes claimant's subjective complaints, diagnoses and treatment but failed to provide medically acceptable clinical or diagnostic findings to support her restrictive assessment. Moreover, her opinion is inconsistent with the record as a whole, which revealed some benign objective findings, but with many physical and neurological examinations in which objective findings

were unremarkable.  It is also inconsistent with the routine and conservative treatment involving medications, which the claimant admitted was effective in controlling her symptoms.

[AR 26.]

### 3. Analysis

Plaintiff argues that the ALJ failed to adequately articulate why she found the 2020 opinion of treating neurologist, Margaret Burnett, M.D. unpersuasive. [Pltf.'s Br. at 5-12; AR 1485-1489.] Plaintiff argues that the ALJ provided a boilerplate reasoning that was unsupported by substantial evidence.  Additionally, Plaintiff maintains that because her symptoms "wax and wane," the ALJ should not have relied on the one-time examination by the consultative examiner.  Rather, the ALJ should have found the opinion of Plaintiff's long time treatment specialist most persuasive as it was supported by extensive treatment notes and diagnostic findings. (Pltf.'s Br. at 10.)

The Court agrees with Plaintiff.  The ALJ's evaluation of the opinion of Dr. Burnett did not satisfy the agency's articulation requirement for the persuasiveness of medical opinions.  The ALJ failed to engage with Dr. Burnett's assessment in any meaningful sense and made only a passing assessment of the "supportability" and "consistency" factors that the Commissioner deems most important.  82 Fed. Reg. at 5853.  The ALJ's apparent analysis of the "supportability" factor is limited to the boilerplate statement that Dr. Burnett did not support her opinion with "medically acceptable clinical or diagnostic findings to support her restrictive assessment." [AR 26.]  This fails to provide any substantive reason for rejecting Dr. Burnett's detailed treatment notes that were supported by MRI's, blood tests, clinic interviews, and a detailed history demonstrating medication management for Plaintiff's recurring and relapsing MS symptoms.  [See e.g. AR 760, 762, 766.]  For example, on May 22, 2014, Dr. Burnett noted "we obtained an MRI of the brain and the orbits with and without contrast today stat.  Per my read, she has multiple

enhancing lesions which are also pointed out by Neuroradiology. She has an enhancing right optic nerve despite 3 days of treatment." [AR 749.] Plaintiff had additional MRI's in February 2017 and January 2018. [AR 1375

While the ALJ found that Dr. Burnett's treatment notes merely summarized Plaintiff's "subjective complaints," Dr. Burnett's opinion was based on both Plaintiff's statements and Dr. Burnett's many examinations, including mental status examinations. Clinical interviews and mental status evaluations are "objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Given the existence of objective clinical and diagnostic evidence underlying Dr. Burnett's opinion, the ALJ's conclusory statement otherwise was insufficient as an explanation for how the factor of supportability was considered. *See Maria S. v. Kijakazi,* No. 2:20-cv-09783-MAA, 2022 U.S. Dist. LEXIS 66967 (C.D. Cal. Apr. 11, 2022) *(citing Steele v. Saul*, 520 F. Supp. 3d 1198, 1210 (D. Alaska 2021) ("But, '[t]he Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion.'"). The ALJ's single-sentence statement fails to substantively engage with Dr. Burnett's assessment.

The same conclusion applies to the ALJ's apparent analysis of "consistency." The ALJ found that Dr. Burnett's opinion was inconsistent with the record which revealed "some benign objective findings, but [] many physical and/or neurological examinations in which the objective findings were unremarkable." [AR 26.] Based on the ALJ's statement, the record consisted of (1) benign objective findings; (2) unremarkable physical examinations; and (3) unremarkable neurological examinations. This statement mischaracterizes the record. The record included evidence that Plaintiff suffered from flare ups and an "aggressive" exacerbation of her MS symptoms sometimes requiring steroid treatments. [AR 743, 748, 1132, 1137, 1140.] Further, even while adhering to her Tysabri injections, in December 2018, Plaintiff reported that she "went to the ER" after she fell, hit her head, and lost

11

consciousness for five minutes after her "leg buckled and she fell." [AR 938.] Additionally, Plaintiff regularly presented to medical visits with facial asymmetry, numbness and tingling in her legs, balance issues, foot drop, a slow gait, a limp, and muscle weakness. [AR 727, 728, 734, 745, 749, 752, 758, 791, 891, 839, 976, 1211.] While there is some evidence to suggest that Plaintiff's MS symptoms escalated on an intermittent basis due to lack of medication, substantial evidence does not support the ALJ's finding that the record included only unremarkable and benign objective findings.

In opposing Plaintiff's motion, Defendant has attempted to offer the reasoning and specificity that is absent from the ALJ's opinion. (Def.'s Br at 19-22.) For example, Defendant argues that Dr. Burnett's opinion is "internally inconsistent," a rationale not mentioned by the ALJ. The Court, however, may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner). The Court is constrained to review the explanation actually provided by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)). The only explanation actually provided by the ALJ for the factors of supportability and consistency was conclusory and, therefore, failed to satisfy the agency's articulation requirement. Remand is warranted on this issue.

## V.  CONCLUSION

The Court has discretion to remand or reverse and award benefits. *See*

*Trevizo*, 871 F.3d at 682.  Where no useful purpose would be served by further proceedings and the record has been fully developed, it may be appropriate to exercise this discretion to direct an immediate award of benefits.  *See id*. at 682-83.  But where there are outstanding issues that must be resolved before a determination of disability can be made or it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Garrison*, 759 F.3d at 1021 (if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court must remand for further proceedings).

The Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors.  *See Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved").  On remand, the ALJ should conduct a review of the entire record in a manner consistent with the Court's findings.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the Decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: July 08, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

13